IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN HELM and STEVEN LACY | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHARLES A. PALO, JR. | : | NO. 14-6528 |

MEMORANDUM

Dalzell, J.                                                          February 3, 2015

## I.      Introduction

We consider here defendant Charles A. Palo, Jr.'s motion to dismiss plaintiffs' complaint. Plaintiffs John Helm and Steven Lacy bring three causes of action against defendant, in his individual and official capacities, under 42 U.S.C. § 1983 alleging violations of the Fourth and Fifth Amendments.

In his motion to dismiss, defendant argues that (1) probable cause defeats plaintiffs' unlawful detention and malicious prosecution claims, (2) his failure to give plaintiffs Miranda warnings is not actionable, (3) he is entitled to qualified immunity, and (4) plaintiffs' claims against him in his official capacity fail to allege any underlying constitutional violation or basis of municipal liability under Monell.

We have jurisdiction pursuant to 28 U.S.C. § 1331.

We will grant defendant's motion to dismiss and dismiss plaintiffs' complaint in its entirety. We dismiss Count I because defendant's omissions from the affidavit of probable cause were not material to establishing probable cause. We dismiss Count II because defendant's failure to provide Miranda warnings does not support a Section 1983 claim for violations of the

Fifth Amendment.[1] We dismiss Count III because defendant had probable cause to initiate criminal proceedings against plaintiffs.

## II.    Standard of Review

A defendant moving to dismiss under Fed R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. See Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action…do not suffice." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

In the wake of Twombly and Iqbal, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the

---

[1] Plaintiffs concede that their Fifth Amendment claim "does not pass muster." Pl. Resp. at 2. Indeed, a police officer's failure to provide Miranda warnings cannot support a Section 1983 claim. See Chavez v. Martinez, 538 U.S. 760, 772 (2003) (explaining that "[r]ules designed to safeguard a constitutional right…do not extend the scope of the constitutional right itself, just as violations of judicially crafted prophylactic rules do not violate the constitutional rights of any person."). Accordingly, we do not address this claim further.

complaint are sufficient to show that the plaintiff has a plausible claim for relief.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the complaint.

## III.   Factual Background

During the early morning hours of August 14, 2013, Michael Panco was violently assaulted and robbed. Complaint at ¶¶ 9-10. At about 3:46 a.m. Kristen Yanuzzi, Panco's girlfriend, drove him to the Ridley Township Police Station. Id. at ¶ 12. Panco, bleeding and bruised, told Corporal Michael Bongiorno of the Ridley Township Police that he had been attacked and robbed. Id. at ¶¶ 13-14. Panco informed Corporal Bongiorno that he encountered William McCollaum while he was walking, and then two or three other white males attacked him and stole his wallet. Id. at ¶ 15. Yanuzzi told Corporal Bongiorno that McCollaum came and told her it was not him, but his "boys" who attacked Panco. Id. at ¶ 16.

The police went to McCollaum's home where McCollaum told them that he did not attack Panco, but that his friends Brandon Havens and Anthony April did. Id. at ¶¶ 17-18. Officers found Panco's wallet, without any cash, about three houses away from McCollaum's residence. Id. at ¶ 20.

Corporal Bongiorno created a report containing this information, which Detective

Sergeant Charles A. Palo, Jr., the defendant, read and acknowledged prior to drafting a

supplemental report. Id. at ¶¶ 21-22. In his supplemental report, Sgt. Palo noted McCollaum's

comments that his "boys" beat up Panco, but he did not identify them by name. Id. at ¶ 23. Later

that day defendant interviewed McCollaum at the Ridley Township Police Station where

McCollaum provided a written statement. Id. at ¶ 24. In that statement, McCollaum reported that

the plaintiffs, Helm and Lacy, assaulted Panco on the street. Id. at ¶ 25. In his written statement,

McCollaum explained that he had initially identified Havens and April as the assailants because

he was afraid plaintiff Lacy and his friends "would come after [him]." Id. at Ex. B. Defendant

drafted and submitted an affidavit of probable cause in order to obtain a warrant for plaintiffs'

arrest. Id. at ¶¶ 27-28.

In his affidavit of probable cause Sgt. Palo did not include McCollaum's prior

identification of Havens and April as the assailants. Id. at ¶ 29. Plaintiffs maintain that because

defendant omitted that prior statement he was able to obtain the arrest warrants he sought. Id.

The next day, August 15, 2013, plaintiffs were arrested and brought to the Ridley

Township Police Station. Id. at ¶ 30. Defendant had not questioned Havens or April. Id. at ¶ 31.

Defendant did not read plaintiffs their Miranda rights prior to questioning them. Id. at ¶

32. Defendant interrogated plaintiffs, who denied their involvement and explained that they had

been at the beach in Wildwood Crest, New Jersey. Id. at ¶¶ 33, 8. Defendant told plaintiffs that

McCollaum implicated them as the assailants, and when plaintiff Lacy demanded to confront

McCollaum, defendant obliged. Id. at ¶ 34. Defendant brought McCollaum to the station where

the four of them -- defendant, plaintiffs Lacy and Helm, and McCollaum -- were all in the same

room. Id.

Defendant asked McCollaum what he had seen, and McCollaum responded that he saw plaintiffs attack Panco. Id. at ¶ 35. Plaintiffs were shocked -- Helm became upset and Lacy called McCollaum a liar. Id.

Sgt. Palo continued to interrogate plaintiff Helm. Id. at ¶ 36. Succumbing to the interrogation, Helm says he falsely confessed to attacking Panco with Lacy. Id. at ¶ 37. ("As a direct result of [defendant's] aggressive, harassing, and oppressive questioning and interrogation, [Helm] claimed that he and [Lacy] had committed the crimes against Panco, even though they did not.").

Nancy Helm, plaintiff Helm's mother, then arrived at the station where she explained that both plaintiffs were with her at the beach when Panco was attacked. Id. at ¶ 38. Defendant explained to Nancy Helm his theory that plaintiffs "came back from Wildwood Crest, New Jersey during the early morning hours of August 14, 2013, attacked Panco, and then returned to Wildwood Crest, New Jersey before Nancy Helm woke up." Id. at ¶ 43.

Defendant then obtained an additional statement from McCollaum, after telling him that Nancy Helm insisted the plaintiffs were at the beach with her during the assault. Id. at ¶ 39. In this additional statement McCollaum now said that he saw plaintiffs come "back from down the shore to Ridley Township looking to buy [drugs] and walk past the outfront [sic] of [his] house and beat the victim up." Id. at ¶ 40. Plaintiffs allege that McCollaum changed his story so he could implicate them in Panco's assault. Id. at ¶ 41.

Sgt. Palo moved forward with charging plaintiffs with Panco's assault. Id. at ¶ 44. He charged them with felony robbery, felony aggravated assault, misdemeanor simple assault, misdemeanor recklessly endangering another's welfare, misdemeanor receiving stolen property, misdemeanor theft by unlawful taking, and conspiracy to commit those offenses. Id. at ¶ 44. At

the preliminary hearing on September 16, 2013 Panco, the victim, testified that he did not recognize plaintiffs and that his last memory on the morning of the incident was of seeing McCollaum. Id. at ¶ 45. McCollaum also testified at the preliminary hearing where he stated that he saw plaintiffs pull something from Panco's pockets, that the incident was two or three houses from McCollaum's home, and that plaintiffs were yelling at Panco. Id. at ¶ 46.

On December 2, 2013, Morgan Reeves, who had returned Panco's wallet to the area where Panco was assaulted, gave Sgt. Palo a written statement. Id. at ¶¶ 11, 48. Reeves reported that on the morning of Panco's assault she, McCollaum, Havens, and April were all sitting on McCollaum's porch. Id. at Ex. B. Reeves stated that McCollaum approached Panco in the street, then returned ten minutes later with Panco's wallet from which he removed cash. Id. at ¶ 49. Reeves explained that she had not come forward before because she was afraid of McCollaum, who had "put his hands on [her] before." Id. That same day defendant obtained a statement from April who confirmed that McCollaum, after leaving for a period of time, returned with a wallet from which he removed cash. Id. at ¶ 50. McCollaum told April, Reeves, and Havens to leave his porch and that April should say "at Court" that he saw plaintiffs attack Panco. Id. Havens also provided a statement corroborating Reeves's and April's accounts that McCollaum left, then returned with a wallet from which he removed seven dollars. Id. at ¶ 51.

Despite this new information and Nancy Helm's corroboration of their alibi, defendant continued with the prosecution of Helm and Lacy. Id. at ¶ 52. On June 26, 2014, they were acquitted in a bench trial. Id. at ¶ 54.

Plaintiffs allege that they were unlawfully seized and arrested on August 15, 2013 as defendant "knowingly and deliberately, or with reckless disregard, omitted the relevant and material facts in his Affidavit of Probable Cause that McCollaum had first identified Havens and

6

April as the perpetrators." Id. at ¶¶ 56-57. But for this omission, plaintiffs claim, Sgt. Palo would not have secured warrants for their arrest. Id. at ¶ 58. Plaintiffs argue that Sgt. Palo lacked probable cause to have them seized and arrested, and lacked probable cause to continue their detention while they were at the station and later incarcerated. Id. at ¶ 61.

Plaintiffs allege that Sgt. Palo instituted and maintained criminal proceedings against them all the way through trial. Id. at ¶¶ 71-72. Plaintiffs argue that defendant lacked probable cause to institute the criminal proceedings and to insist that the proceedings go to trial and acted "maliciously and not for the purpose of bringing Plaintiffs to justice." Id. at ¶¶ 73-75. Plaintiffs allege defendant did so "to cover up his own negligent and careless investigation into the crimes against Panco." Id. at ¶ 76.

## IV.    Discussion

A cause of action under Section 1983 requires only an allegation that some person, acting under color of state or territorial law, deprived a plaintiff of a federal right. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Shuman ex rel. Shertzer v. Penn Manor Sch. Dist., 422 F.3d 141, 146 (3d Cir. 2005).

### A.    Section 1983: Unlawful Detention

Plaintiffs style Count I of their complaint as a Fourth Amendment claim for unlawful detention, but Count I encompasses their seizure, arrest, detention at the Ridley Township Police Station, and incarceration thereafter. Plaintiffs' Fourth Amendment claim rests on their insistence that there was no probable cause for their arrest, and, but for Sgt. Palo's omission in the affidavit of probable cause, no arrest warrants would have issued. Plaintiffs argue that Sgt. Palo, by failing to include McCollaum's prior identification of Havens and April as the assailants

in the affidavit of probable cause, acted knowingly or recklessly, and that such an omission was material. Pl. Resp. at 7-8. Plaintiffs also complain of their continued incarceration, though they do not plead its duration. We will address both plaintiffs' arrest and subsequent incarceration.

### 1.   Plaintiffs' Arrest

Sgt. Palo obtained a warrant for plaintiffs' arrests. Complaint at ¶ 29. A warrant issued by a magistrate or judge does not, in itself, shield an officer from liability for false arrest. Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). A plaintiff may prevail in a Section 1983 action for false arrest made pursuant to a warrant if he can show by a preponderance of the evidence that (1) the police officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant" and (2) that "such statements or omissions [were] material, or necessary, to the finding of probable cause." Id. at 786-87. See also Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) (explaining that this test applies "whether the alleged falsehood is an affirmative misrepresentation or a material omission."). An officer makes an omission with reckless disregard if he withholds a fact that any reasonable person would have known that the judge would have wished to know. Wilson, 212 F.3d at 788.

If an officer omits such an item of information knowingly, or with reckless disregard for the truth, we next determine whether that omission was material or necessary to finding probable cause. Id. at 789. In a feat of "reconstructive surgery," we determine the materiality of an assertion or omission by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted" to determine whether the "corrected" affidavit would establish probable cause. Id.

While typically the existence of probable cause in a Section 1983 action is a question of fact, we may conclude that probable cause existed as a matter of law if the evidence, viewed most favorably to a plaintiff, would not reasonably support a contrary factual finding. Sherwood, 113 F.3d at 401.

Probable cause exists if there is a fair probability that the person being arrested committed the crime at issue. Id. An officer has probable cause for an arrest "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey, 71 F.3d 480, 483 (3d Cir. 1995); see also Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000). We assess the reasonableness of an officer's conduct based upon the officer's perspective at the time he or she acted. Carswell v. Borough of Homestead, 381 F.3d 235, 246 (3d Cir. 2004). Once an officer believes he has probable cause, he is "not required to undertake an exhaustive investigation in order to validate the probable cause." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 n.8 (3d Cir. 2000) (explaining that an officer had probable cause, even though he did not interview every possible witness, because he had a credible report from a school principal who witnessed the alleged crime).

Although police are not entitled to rely on just any witness accusation when establishing probable cause, they are permitted to contextually assess the circumstances surrounding witness identification. See Wilson, 212 F.3d at 791 (explaining that courts "have not stated that police can rely on any witness accusation, however unreliable or unbelievable."); Sharrar v. Felsing, 128 F.3d 810, 818 (3d Cir. 1997) (explaining that an officer was permitted, after a victim of domestic violence initially identified her perpetrator as someone else, to "assess [her] demeanor, find her story credible, and rely on her subsequent identification of her husband as the

attacker."). Affidavits of probable cause may rely on witness identification -- direct, first-hand evidence is not a prerequisite to a warrant. See United States v. Ritter, 416 F.3d 256, 262 (3d Cir. 2005). A magistrate considering the sufficiency of an affidavit of probable cause looks at the totality of the circumstances -- a flexible standard -- and makes a practical, common-sense decision of whether there is probable cause. Id. at 263.[2]

Here, the affidavit of probable cause did not include the disclosure of McCollaum's prior identification of Havens and April as Panco's assailants. Complaint Ex. C. Defendant states in the affidavit that "[o]n Wednesday, August 14, 2013, Sgt. Palo interviewed the witness, William McCollaum, at the Ridley Township [P]olice Station. William McCollaum gave Sgt. Palo a signed written statement. William McCollaum told Sgt. Palo his friends, John Helm W/M/18 and Steven Lacy W/M/19 walked toward the victim and jumped him." Id. The affidavit goes on to describe McCollaum's account of the assault.  Sgt. Palo does not mention McCollaum's earlier, verbal statements identifying April and Havens as the assailants.

Plaintiffs allege that Sgt. Palo omitted McCollaum's prior identification knowingly or recklessly. Even if we grant plaintiffs this inference -- that defendant's omission was something more than negligence -- the omission itself must have created a falsehood in the affidavit and been material or necessary to the finding of probable cause. Wilson, 212 F.3d at 786-87.

Thus, the alleged falsehood in the affidavit would be that McCollaum gave one, and only one, account of the assault. To determine whether that omission was material or necessary to

---

[2] While there are specific factors to consider when the information in an affidavit of probable cause comes from an anonymous tip or confidential informant -- such as the officer's ability to corroborate the tip or the confidential informant's credibility -- these concerns are less salient when the information in the affidavit does not derive from a confidential informant or anonymous tip. See id.; see also Alabama v. White, 496 U.S. 325, 332 (1990) (holding that an anonymous tip, as corroborated by its predictive value, exhibited sufficient indicia of reliability to justify an investigatory stop of a vehicle).

finding probable cause, we will insert the omitted facts to determine whether such a reconstructed affidavit would establish probable cause. Id. at 789.

As defendant demonstrates in his motion to dismiss, such a reconstructed affidavit would include McCollaum's prior statement and McCollaum's reasons for his earlier identification. Had defendant included the omission in his affidavit, the issuing judge would have considered this account:

> On Wednesday, August 14, 2013, Corporal Bongiorno went to McCollaum's house and knocked on the door. His father granted access and we spoke to William. He stated he had nothing to do with the attack and said his 2 friends did it. He identified them as Brandon Havens and Anthony April.
>
> Later on Wednesday, August 14, 2013 Sgt. Palo interviewed the witness, William McCollaum, at the Ridley Township [P]olice Station.
>
> William McCollaum gave Sgt. Palo a signed written statement. William McCollaum told Sgt. Palo his friends, John Helm W/M/18 and Steven Lacy W/M/19 walked towards the victim and jumped him…
>
> William McCollaum wrote in his statement that: "I first said April and [H]avens did because I was afraid (sic) [L]acy and his friends would come after me. [L]acy is known for jumping people."

Def. Memorandum at 13-14. The underlined portions reflect how the reconstructed affidavit would have read had Sgt. Palo included the omitted information.

Such a reconstructed affidavit would on its face have established probable cause. Though police officers are not always justified in relying on witness identifications -- such as when they are unreliable or unbelievable, see Wilson, 212 F.3d at 791 -- police officers can consider the context of the identification, including a witness's reasons for why he may have changed his story. See, e.g., Sharrar, 128 F.3d at 818 (permitting an officer to rely on a victim's subsequent identification of her attacker when the domestic violence situation provided context for her initial

identification of the perpetrator as someone other than her husband). In the reconstructed affidavit, Sgt. Palo would have informed the issuing judge that McCollaum had previously identified Havens and April but had subsequently identified plaintiffs, and explained that fear motivated McCollaum's earlier statement. Such an affidavit, even with those qualifications, would establish probable cause.

Plaintiffs therefore cannot show that Sgt. Palo's omission was material, or necessary, to the finding of probable cause. Regardless of defendant's level of culpability for this omission, it was not material. Plaintiffs were arrested pursuant to a warrant, and their arrest and detainment pursuant thereto did not violate their Fourth Amendment rights.

### 2.   **Plaintiffs' Incarceration**

Plaintiffs also complain of their subsequent incarceration. Though plaintiffs do not plead facts regarding the duration of their incarceration, they do plead that they were arrested on August 15, 2013, had their preliminary hearing on September 16, 2013, and were acquitted in a bench trial on June 26, 2014. Complaint at ¶¶ 30, 45, 54. After plaintiffs' arrest, while they were still at the Ridley Township Police Station, Sgt. Palo learned of plaintiffs' alibi from plaintiff Helm's mother. Id. at ¶ 38. In December of 2013, after the preliminary hearing, but before trial, Reeves, April, and Havens provided defendant with statements implicating McCollaum as Panco's assailant. Id. at ¶¶ 48-51.

Our Court of Appeals, and many others, "have reached the almost tautological conclusion that an individual in custody has a constitutional right to be released from confinement after it was or should have been known that the detainee was entitled to release." Schneyder v. Smith, 653 F.3d 313, 330 (3d Cir. 2011) (internal quotations omitted) (collecting cases). Like most tautologies, this statement is not instructive -- it supplies no guidance on what it means to know

that one who is in custody is entitled to release. Still, the right exists, and we must consider whether, in light of the pleadings, plaintiffs' rights were violated because of their confinement.

The existence and scope of an officer's duty to seek the release of a suspect after a lawful arrest is unsettled in our Court of Appeals. See Toribio v Spece, 558 F. App'x 227, 230 (3d Cir. 2014) (citing Wilson, 212 F.3d at 792), cert. denied, 134 S. Ct. 2889 (2014).  Other Courts of Appeals disagree on the scope of this duty as well. See Brady v. Dill, 187 F.3d 104, 112 (1st Cir. 1999) (explaining that police officers do not bear the additional burden, after executing a facially valid arrest warrant, of determining whether the person detained is the guilty party or not); but see id. at 124 (Pollack, J., concurring in the judgment only) (proposing that the Constitution requires police officers to release a suspect once they know to a certainty that the person in custody is not the perpetrator).  See also Sanders v. English, 950 F.2d 1152, 1162 (5th Cir. 1992) (explaining that an officer's deliberate failure to disclose "undeniably credible and patently exculpatory evidence" to the prosecutor exposed him to liability under Section 1983).

Our Court of Appeals has not yet defined the duty to seek release or what level of knowledge an officer must have to trigger any such a duty. Rather, our Court of Appeals considers whether any post-arrest exculpatory information actually dispelled probable cause. See, e.g., Toribio, 558 F. App'x at 230 (explaining that even when the officer became aware that the suspect in custody was shorter than the description of the robber, the suspect had already been arrested on a warrant and other witnesses had positively identified him, and so the height difference was not "patently exculpatory"); Coley v. County of Essex, 462 F. App'x 157, 161 (3d Cir. 2011) (probable cause not dispelled by additional evidence obtained after defendant was incarcerated, even though the additional evidence neither confirmed nor excluded the possibility that defendant had sexually abused the victim and the victim changed one aspect of her account

of her abuse); <u>Andros v. Gross</u>, 294 F. App'x 731, 735 (3d Cir. 2008) (explaining that although defendant officers' theory of the murder seemed unconvincing in hindsight, it was not impossible, and thus was reasonable at the time the defendant officers arrested the later-exonerated suspect); <u>Wilson</u>, 212 F.3d at 792-93 (explaining that regardless of the scope of the duty or level of knowledge required to trigger that duty, a friend's partial alibi for the suspect and other conflicting descriptions did not dispel probable cause).

We take our cue from our Court of Appeals and do not opine on whether Sgt. Palo had a duty to seek plaintiffs' release when probable cause no longer existed or what level of knowledge defendant may have had in order to trigger such a duty, but rather consider whether anything Sgt. Palo learned subsequent to plaintiffs' arrests and detention dispelled any probable cause. Sgt. Palo learned of plaintiffs' alibi almost immediately after their arrest. Although plaintiffs take issue with Sgt. Palo's theory that they "came back from Wildwood Crest, New Jersey during the early morning hours of August 14, 2013, attacked Panco, and then returned to Wildwood Crest, New Jersey before Nancy Helm woke up," Complaint at ¶ 43, his theory is of the kind in <u>Andros</u>: unconvincing in hindsight, but not impossible, and therefore reasonable at the time. Although plaintiffs insist that this theory of the case, based on McCollaum's statements, was "absurd and filled with lies," Complaint at ¶ 52, Nancy Helm's alibi for the plaintiffs did not provide patently exculpatory evidence, and neither did the three statements Sgt. Palo obtained in December of 2013. The statements from Reeves, April, and Havens are akin to the evidence obtained in <u>Toribio</u>, <u>Coley</u>, and <u>Wilson</u>: they cast doubt on plaintiffs' culpability and conflicted with other prior evidence and identifications, but did not dispel probable cause.[3]

---

[3] Probable cause is not a high bar. It is a necessarily probabilistic determination, <u>Wilson</u>, 212 F.3d at 789, and is taken from the perspective of a reasonable person who knows what the officer knows at the time, and not reframed by subsequent revelation.  <u>Orsatti</u>, 71 F.3d at 483; <u>Paff</u> , 204 F.3d at 436; <u>Carswell</u>, 381 F.3d at 246.

Even taking the facts in the light most favorable to plaintiffs, they cannot state a facially plausible claim to relief based on their continued incarceration.

Plaintiffs cannot prevail on this cause of action, for either their arrest and detention or subsequent incarceration. We will therefore grant Sgt. Palo's motion to dismiss as to Count I of the complaint.

### B.     Section 1983: Malicious Prosecution

To prevail on a malicious prosecution claim under Section 1983, a plaintiff must show that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. McKenna v. City of Phila., 582 F.3d 447, 461 (3d Cir. 2009); Johnson v. Knorr, 477 F.3d 75, 82-83 (3d Cir. 2007). The existence of probable cause to arrest a plaintiff disposes of malicious prosecution claims with respect to the charges brought against him. See id. at 82. Although having probable cause for one criminal charge does not entirely insulate a police officer from malicious prosecution claims based on other alleged groundless charges, those additional charges must also burden the plaintiff. Id. at 83-84.

Sgt. Palo argues that having probable cause for their arrests defeats plaintiffs' malicious prosecution claim. Plaintiffs argue that defendant lacked both probable cause to institute the proceedings against them and to insist that those proceedings continue through trial. Complaint at ¶¶ 73-74.

As we held in Section IV.A, Sgt. Palo had probable cause to institute the criminal proceedings against plaintiffs and grounds to file an affidavit of probable cause in support of an

arrest warrant. Based on the criminal complaint that accompanied the affidavit of probable cause, defendant charged plaintiffs at that time with seven offenses, including conspiracy, felony robbery, felony aggravated assault, misdemeanor simple assault, misdemeanor recklessly endangering another person, misdemeanor receiving stolen property, and misdemeanor theft by unlawful taking. Def. Motion Ex. B. These are the same crimes that plaintiffs say they were charged with in their complaint. See Complaint at ¶ 44 (listing the charges that defendant moved forward with). Plaintiffs allege no additional burdens from these charges, of which they were acquitted.

Because plaintiffs cannot show that defendant instituted the proceedings without probable cause, they cannot prevail on their claim under Section 1983 for malicious prosecution. We will therefore dismiss Count III of their complaint.

### C.    Official Capacity Claims and Monell Liability

Plaintiffs have sued Sgt. Palo in both his individual and official capacities. But plaintiffs assert that they have not filed a Monell claim against defendant, but rather "have filed a Complaint which duly sets Fourth Amendment claims against Officer Palo, in his individual and official capacities, that are valid under the prevailing law." Pl. Resp. at 2. Plaintiffs only elaborate insofar as they again state that defendant "mistakenly argue that Plaintiffs' Monell claim fails, but Plaintiffs have not asserted a claim under Monell, so the argument is moot." Id. at 13 (underlining added).

We therefore find it necessary to briefly explain the legal distinction between a suit against an officer both in his individual capacity and official capacity. Individual, or personal, capacity suits seek to impose personal liability upon a government official for actions he takes under the color of state law. Kentucky v. Graham, 473 U.S. 159, 165 (1985). Official capacity

suits, however, are just another way of pleading an action against an entity of which an officer is an agent. Id.; see also Monell v. Department of Soc. Servs., 436 U.S. 658, 690 n. 55 (1978) (explaining in the context of the holding that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). So long as the governmental entity receives notice of the suit and an opportunity to respond to it, an official-capacity suit is, in all respects, to be treated as a suit against the government entity itself. Graham, 473 U.S. at 166.

When plaintiffs sued defendant in his official capacity as a Ridley Township Police Officer, they actually sued Ridley Township, his employer. That is the legal import of suing a police officer, or other official, in his or her official capacity.

Since Ridley Township is a municipal entity, not a state entity, we look to Monell to ascertain what liability, if any, Ridley Township has for Sgt. Palo's alleged conduct. We learn that "the language of § 1983, read against the background of [the legislative history of the Civil Rights Act of 1871] compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691 (emphasis in original).

The import of Monell is that municipalities and other local government bodies do not have absolute immunity, id. at 701, but are liable only for their own constitutional torts. See Los Angeles Cnty., Cal. v. Humphries, 562 U.S. 29, 131 S. Ct. 447, 452 (2010) (explaining, with reference to Monell, that municipalities are only liable for their own federal law violations, which are defined in terms of policies and customs). A plaintiff seeking to impose liability on a

municipality under Section 1983 must identify a municipal policy, custom or practice causing the plaintiff's injury. Board of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403-04 (1997) (explaining that locating such a policy ensures that the municipality is held liable only for constitutional deprivations "resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality.").

As stated, when plaintiffs sued Sgt. Palo in his official capacity, they sued his employer. To hold defendant's employer, a municipal entity, liable for defendant's alleged conduct plaintiffs must plead and prove that Sgt. Palo's alleged conduct resulted from some policy, custom or practice that entity promulgated. Since plaintiffs did not plead in their complaint that Ridley Township has a policy, practice, or custom that led to the deprivation of their constitutional rights, they did not state a claim upon which relief can be granted against Ridley Township, that is, the defendant in his official capacity. Plaintiffs' failure to plead a Monell claim is far from moot; it is precisely why their claims against Sgt. Palo in his official capacity must fail.

We will therefore grant defendant's motion to dismiss as to all claims against him in his official capacity.

### D.    Qualified Immunity

Qualified immunity shields government officials from liability for civil damages to the extent that their conduct did not violate clearly established constitutional rights of which a reasonable officer would have known. Behrens v. Pelletier, 516 U.S. 299, 305 (1996) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal alterations omitted)). Our Court of Appeals has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases."

Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009); see also, e.g., Mitchell v. Township of Willingboro, 913 F. Supp. 2d 62, 67 (D.N.J. 2012) (quoting Newland for this proposition and rejecting a qualified immunity defense at the Rule 12(b)(6) stage).  But as qualified immunity is "an immunity from suit rather than a mere defense to liability," the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. 223, 231-32 (2009) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) and Hunter v. Bryant, 502 U.S. 224, 227 (1991)).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step process for addressing claims of qualified immunity:

> A court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . . if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.

Id. at 201. Subsequently, the Supreme Court held this two-step process to be optional -- not mandatory -- but frequently beneficial.  Pearson, 555 U.S. at 227, 236.

The qualified immunity of an officer in a case where his request for a warrant allegedly caused an unconstitutional arrest is defined by the same standard of objective reasonableness used in suppression hearings. See Mally v. Briggs, 475 U.S. 335, 344-45 (1986) (explaining that only "where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost.") (internal citations omitted). Thus, the question is whether a reasonably well-trained officer would have known that

his affidavit failed to establish probable cause and that he should not have applied for the warrant at all. Id. at 345.

Even when viewing the facts in the light most favorable to the plaintiffs, they cannot demonstrate that defendant's conduct violated their constitutional rights. As explained in Sections IV.A and IV.B above, Sgt. Palo had probable cause to institute criminal proceedings against plaintiffs, thus defeating their claims under Section 1983 for unlawful detention and malicious prosecution. Because we have found, even taking the facts in the light most favorable to the plaintiffs, that defendant did not violate plaintiffs' constitutional rights, we do not continue to the second step of the qualified immunity analysis.

**V.      Conclusion**

Plaintiffs have failed to state any § 1983 claim upon which relief can be granted. Sgt. Palo's omission from the affidavit of probable cause was not material or necessary to establishing probable cause.  He had probable cause to initiate criminal proceedings against plaintiffs, and nothing he subsequently learned dispelled that probable cause.  Sgt. Palo's failure to provide Miranda warnings does not support a Section 1983 claim. Plaintiffs have also failed to plead any facts or legal theories supporting a suit against defendant in his official capacity.

We will therefore grant defendant's motion to dismiss in its entirety and dismiss all of plaintiffs' claims with prejudice.  An appropriate Order follows.

BY THE COURT:


  _/s/ Stewart Dalzell, J.
Stewart Dalzell, J.
